BRIANE NELSON MITCHELL (ISB #2346)
**MAUK & BURGOYNE**
515 South 6th Street
Post Office Box 1743
Boise, Idaho 83701-1743
Telephone: (208) 345-2654
Facsimile  (208) 345-3319
nels@maukburgoyne.com

Attorneys for Defendants PCS Edventures!.com, Inc.
and Anthony A. Maher

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PCS EDVENTURES!.COM, INC., an Idaho )<br>corporation, ANTHONY A. MAHER, an )<br>individual, and SHANNON M. STITH, an )<br>individual, )<br>)<br>Defendants. )<br>) | Case No. 10-CV-00433<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER [DKT. NO. 15]** |

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I.     Preliminary Statement ............................................................................................................1

II.    Legal Standard .......................................................................................................................1

III.   The Court Should Strike the False, Misleading, Immaterial and/or Impertinent
       Portions of the SEC's Amended Complaint ..........................................................................3

       A.    The Outside Auditor - - HJ & Associates .................................................................3

       B.    The Difference Between Recording Revenue, and Reporting, Booking
             or Recognizing Revenue ...........................................................................................5

       C.    The Barron Partners LP $1 Million Convertible Note..............................................7

       D.    Evidence that Saudi Arabia Intended to Enter Into a Contract With Global
             Techniques for PCS Products and Services .............................................................8

IV.    Conclusion - - The Motion to Strike Should Be Granted ....................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES:**

*Ackerman v. Northwestern Mutual,*
   172 F.3d 467(7th Cir. 1999) ...............................................................................................2

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991)......................................................................................................1

*Freeport-McMoRan Oil & Gas Co. v. FERC*,
   962 F.2d 45 (D.C.Cir. 1992)......................................................................................2

*Ivanova v. Columbia Pictures Industries, Inc.*,
   217 F.R.D. 501 (C.D.Cal.2003)..................................................................................2

*United States v. Excellair*,
   637 F.Supp. 1377 (D.Colo.1986)...............................................................................3

*Vess v. Ciba-Geigy Corp.,*
   317 F.3d 1097 (9th Cir. 2003) ................................................................................2,3.

*Whittlestone v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ......................................................................................3

**STATUTES**

17 CFR § 200.66..................................................................................................................2

## I.     Preliminary Statement

The SEC has gone to extraordinary lengths to avoid defending the false and misleading statements in its Amended Complaint.  In its 21 page Response to the Motion to Strike (Dkt. No. 32), the SEC does not, at any point, repeat or quote the actual parts of the Amended Complaint that were placed at issue by the Motion to Strike filed by PCS Edventures!.com, Inc. ("PCS") and Mr. Maher.  Instead, the SEC attacked in different directions hoping that it can shift the Court's focus from the Amended Complaint by confusing the issues with additional accusations, invective and insinuations.  In addition to its Response, the SEC filed a 22 page "Statement of Facts" with 168 pages of documents (Dkt. No. 33) which do not directly respond to the issues raised by this Motion, but rather attempt to prejudice the Court against Mr. Maher and PCS by diverting attention away from the false and misleading statements in the SEC's Amended Complaint.[1]

## II.     Legal Standard

This Motion is brought pursuant to:  (1) the inherent power of the Court (*Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991)); (2) Rule 11 of the Federal Rules of Civil Procedure ("…without factual foundation"); and (3) Rule 12(f) of the Federal Rules of Civil Procedure ("court may strike from a pleading an insufficient defense or any redundant, immaterial or scandalous matter").  Moreover, with the government as the Plaintiff, there are, or should be,

---

[1] PCS and Mr. Maher filed a Motion to Strike and a Motion to Dismiss (and/or for Summary Judgment) on November 8, 2010.  (Dkt. No. 15.)  Additionally, PCS and Mr. Maher also filed a Statement of Undisputed Facts In Support of their Motion to Dismiss the SEC's Amended Complaint (and/or for Summary Judgment) pursuant to District of Idaho Local Civil Rule 7.1(b) and Rule 56(c) ("Undisputed Facts").  (Dkt. No. 16-2.)  The SEC has **not** said that it disagrees with any of the facts in the PCS and Maher Statement of Undisputed Facts, or submitted any evidence showing that any of those facts are disputed as required by Rule 56(e) and Local Civil Rule 7.1(c)(2).  As a result, this Court can and should accept all of the facts as "uncontested" that were included in the Statement of Undisputed Facts submitted by PCS and Mr. Maher pursuant to Rule 56(e) and Local Civil Rule 7.1(e)(2).

　　　The Statement of Facts submitted by the SEC on December 30, 2010 not only does not respond to the Statement of Undisputed Facts filed by PCS and Mr. Maher, but they also have little relevance to the allegations in the SEC's Amended Complaint.  Instead, the SEC throws out new facts which consist of the SEC's argument and speculation interposed with quotes from emails that the SEC takes out of context.

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 1**

heightened standards placed on the SEC.  *See* 17 CFR § 200.66 (SEC's ethics rules state that its "power to investigate carries with it the power to defame and destroy…"); *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47 (D.C.Cir.1992) (government lawyers "have obligations beyond those of private lawyers").

In this case, the SEC is fully aware of the impact that its Amended Complaint, with its false and misleading statements, has had on PCS and its shareholders.  Indeed, the price of PCS stock has fallen fivefold since the SEC filed its lawsuit in August.[2]  Moreover, the SEC also understands that by posting the Amended Complaint on its website and refusing to withdraw or correct the false and misleading statements in the Amended Complaint, the SEC has and will continue to cast a dark cloud over PCS and its ability to maintain its business.[3]  See *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1104 (9th Cir. 2003) ("heightened pleading requirement safeguards defendant's reputation and goodwill from improvident charges of wrongdoing"); *Ackerman v. Northwestern Mutual*, 172 F.3d 467, 469 (7th Cir. 1999) ("public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)").

Contrary to the SEC's argument (Dkt. No. 32, p. 2), this Court does have, and should exercise, the power to strike all or portions of the Amended Complaint.  *See* Fed.R.Civ.P. 11, Advisory Committee Note (courts have "available a variety of possible sanctions to impose for violations, such as striking the offending paper…"); *Ivanova v. Columbia Pictures Industries, Inc.*, 217 F.R.D. 501, 512 (C.D.Cal.2003), *affirmed* 116 Fed.Appx. 100 (9th Cir. 2004), *cert. denied*, 545 U.S. 1115 ("court strikes all alleged facts and references to Ivanova's Complaint

---

[2] According to Yahoo! Finance, PCS stock was trading at $.66 per share on August 26, 2010, while the price on JaNUary 5, 2011 was $.12.  Moreover, most brokerage firms now refuse to process transactions because of the pendency of the SEC lawsuit.
[3] *See* the SEC's website: http://www.sec.gov/litigation/litreleases/2010/lr21635.htm.  After the Motion to Strike was filed on November 8, 2010, the SEC had 21 days to withdraw or correct its Amended Complaint.  Fed.R.Civ.P. 11(c)(2).

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 2**

which are contrary to known facts…"). *United States v. Excellair, Inc.*, 637 F.Supp. 1377, 1398 (D. Colo. 1986) ("an appropriate sanction to be the striking of all references in the [government's] pleadings to ITR's obtaining all or virtually all of Excellair's assets"). Moreover, even the case relied upon by the SEC states that "[t]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues…." (Dkt. No. 32, p. 3, *citing Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).) And, the Ninth Circuit has also said that "if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should disregard those averments, or strip them from the claim." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003).

### III. The Court Should Strike the False, Misleading, Immaterial and/or Impertinent Portions of the SEC's Amended Complaint

#### A. The Outside Auditor - - HJ & Associates

There are three key accusations involving HJ, the outside auditor, that should be stricken from the SEC's Amended Complaint.

The first is the SEC's statement that "[n]either Maher or Stith disclosed to HJ that there was no contract with Saudi Arabia…." (SEC Amended Complaint, ¶ 61.) Unfortunately, even after the SEC was confronted with clear evidence showing the falsity of its statement, it was unwilling to admit its mistake.[4] Instead, the SEC goes off on a tangent arguing that Ms. Stith "obfuscated the situation." (Dkt. No. 32, p. 6.) It is difficult to understand how the SEC can make such an argument in the face of Ms. Stith's statement to HJ that "[w]e do not have an agreement with KSA [Kingdom of Saudi Arabia]."[5]

Second, the SEC does not defend its statement that "[n]either Maher nor Stith disclosed to HJ…that payment for the purported license agreement was contingent on PCS Middle East

---

[4] Dkt. No. 15-1 (Motion to Strike Brief, p. 5); Dkt. No. 17-3, pp. 4, 5 7 (SEC Exhibit 9, pp. 7, 8, 10).
[5] Dkt. No. 17-3, pp. 4, 5, 7 (SEC Exhibit 9, pp. 7, 8, 10).

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 3**

first obtaining a contract and funds from Saudi Arabia." (SEC Amended Complaint, ¶ 61.) But, rather than conceding this mistake, the SEC argues that PCS somehow was able to "disguise" the contingent nature of the expected payment when it filed an Amended Form 8-K/A with the SEC. (Dkt. No. 32, p. 7.) The SEC's "disguise" argument makes no sense given the clear statement in the Amended Form 8-K/A that was filed with the SEC on May 17, 2007:

> Full payment was expected to be received in a single sum payment no later than May 15, 2007. However, PCS ME experienced delays within the Kingdom of Saudi Arabia. These delays caused a postponement in payment to PCS ME, thus causing delays in payment to PCS.[6]

The third problem involves the SEC's assertion that HJ was solely responsible for reversal of the internal ledger entry for the $7.15 million. (SEC Amended Complaint, ¶¶ 56-61.) In responding to this issue, the SEC has chosen to ignore all of the direct evidence demonstrating that its position is incorrect (and, as a result, misleading). The SEC ignores the HJ workpaper schedule for adjusting journal entries that establishes that the adjustment (or reversal) was proposed by both PCS and HJ.[7] The SEC also ignores the direct testimony on this issue.[8]

---

[6] Dkt. No. 17-2, p. 8 (SEC Exhibit 7, p. 22); Dkt. No. 17-1, p. 6 (SEC Exhibit 8, p. 6). The SEC has also suggested that Ms. Stith misled HJ about the fact that PCS had delivered the product (i.e. the BrickLab curriculum) to Dr. Refai. Dkt. No. 32, p. 7. That is not true, because, as the SEC knows, there was evidence of delivery of the BrickLab curriculum. *See* Dkt. No. 17-21 to 17-26; SEC Deposition of Robert Grover, pp. 79-80, 143-144 (Mitchell Supp. Aff., Ex. B); SEC Deposition of Anthony Maher, pp. 64-65, 67 (Mitchell Supp. Aff., Exhibit C)

[7] Dkt. No. 17-3, pp. 8-9 (SEC Exhibit 9, pp. 23-24).

[8] During the SEC Deposition of Ms. Stith the following exchange occurred:
    Q    So, it appears to me that is a proposed adjusting journal entry by HJ & Associates?
    A    That is incorrect.
    Q    It is?
    A    'Proposed by HJ/PCS' means that, in conuunction, the two of us agree that that was the adjustment that needed to be taken. That there was some type of discussion, whether it was verbal or through e-mail, there was some discussion on it. And the one above it that says, 'HJ,' that was proposed strictly to them. The one above that, the first one, 'PCS,' was proposed strictly by PCS.

Dkt. No. 17-5, pp. 7-8 (SEC Deposition of Shannon Stith, pp. 102-103). Ms. Stith also testified that:
    Q    There wasn't pressure from them?
    A    To me?
    Q    Saying, 'We need to do that.' Yeah.

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 4**

At the same time that it is ignoring the direct evidence, the SEC refers to an email exchange between HJ and Ms. Stith, an ambiguous answer given by one of the HJ accountants during his SEC deposition, and an excerpt from HJ's management comment letter. (Dkt. No. 32, pp. 7-9.)[9] However, none of those references actually support the SEC's statement that HJ was "the driving force behind PCS's reversal of the $7.15 million entry" (Dkt. No. 32, p. 9), let alone respond to any of the direct evidence cited by PCS and Mr. Maher showing that the decision to reverse the entry was a joint one made by PCS with HJ.

B.  **The Difference Between Recording Revenue, and Reporting, Booking or Recognizing Revenue**

In its Amended Complaint, the SEC deliberately mischaracterized certain accounting concepts relating to recording, reporting, booking and/or recognizing revenue. (SEC Amended Complaint, ¶¶ 30-45.) In opposing this Motion, the SEC dismisses this part of the Motion to Strike as "the most perplexing" (Dkt. No. 32, p. 9) and argues that the "Court should have no patience for this incongruous deconstruction of otherwise straightforward accounting principles…." (Dkt. No. 32, p. 11.) There is no merit to the SEC's attempt to defend the indefensible. The SEC clearly understands the differences between the words and the potential legal consequences to those differences.

First of all, in her sworn testimony, Ms. Stith clearly explained to the SEC how she used those accounting terms - - that is, how they were used at PCS and how she used them as PCS'

---

                    A       No.
Dkt. No. 17-5, p. 9 (SEC Deposition of Shannon Stith, p. 129).
[9] The SEC's reference to the HJ management comment letter illustrates how the SEC distorts the facts. The SEC introduces its quote and states that "[a]mong the significant deficiencies..." Dkt. No. 32, p. 8. However, the actual quote says "[t]he most significant issue..." Dkt. No. 32, p. 8. There is a big difference between calling something a significant deficiency versus the most significant issue.

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 5**

CFO.  Ms. Stith told the SEC that recording revenue was different than recognizing revenue, or, in her view, booking revenue which meant recording and reporting the revenue.[10]

Second, given the fact that the SEC had knowledge of how Ms. Stith used those accounting terms, it is impossible to understand how the SEC can justify its decision to **change** the actual words used by Ms. Stith in emails that she wrote and sent.  At paragraph 32 of the SEC's Amended Complaint, the SEC references a March 3, 2007 email from Ms. Stith to Mr. Maher and states that "Stith concluded that PCS should not record any revenue…."  That is not true.  Ms. Stith's email talked about recognition of revenue - - not the recording of revenue.[11]  At paragraph 35 of the SEC's Amended Complaint, the SEC again changed the words in one of Ms. Stith's emails.  The SEC states that on March 7, 2007, Ms. Stith had sent an email to HJ outlining steps for "recording revenue…." (SEC Amended Complaint, ¶ 35.)  That is not true, Ms. Stith's email addressed the question of "the best possible approach to recognizing revenue accurately, appropriately…without errors, misstatements or misconceptions…" and was entitled "Revenue Recognition For Large Contract."[12]

Third, the SEC refers to some rather confusing passages from the SEC's Deposition of Frank Hunt in an effort to justify the SEC's own misstatements in its Amended Complaint.  (Dkt. No. 32, p. 10.)  There are several problems with the SEC's use of Mr. Hunt's testimony,

---

[10] As Ms. Stith testified during her SEC Deposition:
      Q    What is your definition of 'booked'?
      A    Recorded and reported.
      Q    Both?
      A    Yes.
      Q    So, recorded, you'd not qualify as booked?
      A    No….
Dkt. No. 17-5, pp. 5-6 (SEC Deposition of Shannon Stith, pp. 71-72).

[11] Dkt. No. 17-6, p. 2 (SEC Exhibit 6, p. 25).

[12] Dkt. No. 17-3, pp. 2-3 (SEC Exhibit 9, pp. 5-6).  And, at another point, the SEC references a March 26, 2007 email and states "Stith sent an email to Maher informing him that PCS should not record revenue…"  (SEC Amended Complaint, ¶ 40).  That email, however, does not discuss the concept of "recording" the revenue on the internal books and records, but instead refers to the much different concept of "booking" the revenue which means recording and reporting to Ms. Stith.  Dkt. No. 17-7, p. 2 (SEC Exhibit 4, p. 2).

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 6**

including the fact that the SEC changed the words written by Ms. Stith, not Mr. Hunt. That is, the SEC ignored the sworn testimony of Ms. Stith where she explained what she meant by the use of those words. In addition, in questioning Mr. Hunt, the SEC did not directly ask him if there is a distinction between the concept of recognizing revenue versus recording revenue on an internal ledger as part of a trial balance. Furthermore, the SEC never asked Mr. Hunt his interpretation of how Ms. Stith had used terms like revenue recognition versus recording of revenue. As a result, no weight should be attached to the SEC's attempt to justify its mischaracterization of the accounting concepts in its Amended Complaint.

C.   **The Barron Partners LP Convertible Note**

The SEC's Amended Complaint contained eight separate references to the Barron Partners LP Convertible Note (which the SEC referred to as the "Note"). (SEC Amended Complaint at ¶¶ 25-29, 36, 46 & 47.) PCS and Mr. Maher moved to strike the allegations relating to the Note because the Note had been cancelled six months before PCS entered into the license agreement with Global Techniques dba PCS Middle East.[13] As a result, the SEC's discussion of the Note in its Amended Complaint was false, misleading and irrelevant.

As with other portions of its Amended Complaint, the SEC makes no effort to defend or support the actual statements that it has made in its Amended Complaint. Instead, the SEC goes on at great lengths about ebitda and Warrants that were issued to Barron Partners and sold to Burlingame Asset Management on April 2, 2007. (Dkt. No. 32, pp. 11-16.) That discussion, however, has no relevance to the Amended Complaint which only addressed the convertible

---

[13] On October 23, 2006, PCS filed a Form 8K with the SEC that stated, in part, that: "the Note Purchase Agreement was cancelled by Barron Partners, LP on October 17, 2006." Dkt. No. 17-8, p. 2 (SEC Form 8-K, Oct. 23, 2006).

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 7**

Note and the ebitda requirement in the Note.  Moreover, the Court should also ignore the SEC's attempt to mischaracterize the argument made in the Motion to Strike.[14]

D. **Evidence That Saudi Arabia Intended to Enter Into a Contract With Global Techniques for PCS Products and Services**

The SEC believes that PCS and Mr. Maher should not have relied upon the evidence that supported their belief that Global Techniques dba PCS Middle East was in a position to fulfill its end of the License Agreement.  That is, in pursuing its fraud-by-hindsight claim, the SEC has taken the position that the actual evidence that supported the understanding of PCS and Mr. Maher should be ignored.  The SEC attempts to dismiss the objective evidence by labeling it "superfluous" and "hearsay," and arguing that "[Mr.] Maher made the unwise decision to gamble that Refai would ultimately come through."  (Dkt. No. 32, p. 19.)

The SEC has again missed the point.  This Motion has targeted specific statements in the Amended Complaint in which the SEC has said that PCS and Mr. Maher knew that Global Techniques dba PCS Middle East did not have a contract with Saudi Arabia and could not pay under the License Agreement.[15]  Those statements, as the SEC knows, are misleading because they ignore the objective evidence that was available to PCS and Mr. Maher on March 28, 2007.[16]  Moreover, the evidence upon which PCS and Mr. Maher relied, including hearsay, is admissible to show the reasonableness of their statements and to negate scienter.

---

[14] The SEC states that "the Defendants now claim, the EBITDA penalties had been retired with the October 2006 conversion...." (Dkt. No. 32, p. 16.)  That is not true.  PCS and Mr. Maher never made that claim.  Moreover, the Brief filed in Support of the Motion to Strike contained a discussion of the ebitda issue and the Warrants (Dkt. No. 16-1 at p. 11, n.25) even though the SEC's Amended Complaint never mentioned the Warrants or an ebitda requirement in the Warrants.

[15] More specifically, the Motion has targeted paragraph 3 of the SEC's Amended Complaint ("did not…have a contract with Saudi Arabia"); paragraph 50 ("did not have a contract with Saudi Arabia and could not pay…without first obtaining a contract and advance funds from Saudi Arabia"); and paragraph 22 ("PCS and its officers knew there was no order or contract between PCS Middle East and Saudi Arabia").

[16] *See* Dkt. No. 16-2, (Undisputed Facts 6-26); Dkt. No. 17-10 (SEC Deposition of Robert Grover); Dkt. No. 17-11 (SEC Deposition of Anthony Maher); Dkt. No. 17-12 (Deputy Minister of Education Letter); Dkt. No. 17-13 (Arab News article); Dkt. No. 17-14 (Photo of Dr. Refai with Saudi Minister of Education); Dkt. No. 17-15 (Reports of Successful Pilot Programs in Saudi Arabia).

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 8**

A few examples of the undisputed facts that supported the belief of PCS and Mr. Maher include:

- During his SEC Deposition, Mr. Maher explained that he understood that Dr. Refai "had the contract and that [he] could get paid the license fee in advance."[17] And, prior to March 28, 2007, Mr. Maher believed that the agreement was complete because Dr. Refai was "1,000 percent confident it was going to happen."[18]

- During his SEC Deposition, Mr. Grover provided testimony regarding "a specific phone call with Refai, asking him to confirm he did, indeed, have the order in place, the contract in place, and that this was going ahead in April. And he said, 'Absolutely. You've got to be on the ground here in April.'"[19] And, Mr. Grover also provided testimony regarding the payment from Saudi Arabia to Global Techniques (dba PCS Middle East):

    Q    Okay. And an 8K that came out that day, march 28th, it said that the money would be collected by May 15th; correct?
    A    Mm-hmm. Refai was absolutely certainly he was going to collect, actually even before that. He said he was going to have it in April….
    Q    Okay. So, he said he would have the money from the government, the case advance in April?
    A    Yes.[20]

- News reports in February 2007 stated that the King of Saudi Arabia and his Council of Ministers announced that they had "approved a six-year, SR 9-billion project to develop the country's public education." Moreover, Education Minister Abdullah Al-Obaid said the King Abdullah education project was aimed at keeping pace with scientific and technological developments.[21]

- In December 2006, the Deputy Minister of Education had sent a letter that said [that he]: Recommends that [t]he Contracting department move forward and explore cost associated with this proposal and if it is appropriate.[22]

---

[17] Dkt. No. 16-2, Undisputed Fact 21; Dkt. No. 17-11, p. 6 (SEC Deposition of Anthony A. Maher, p. 107).
[18] Dkt. No. 16-2, Undisputed Fact 14; Dkt. No. 17-11, p. 7 (SEC Deposition of Anthony A. Maher, p. 57).
[19] Dkt. No. 16-2, Undisputed Fact 12; Dkt. No. 17-10, p. 20 (SEC Deposition of Robert Grover, p. 136).
[20] Dkt. No. 16-2, Undisputed Fact 20; Dkt. No. 17-10, p. 21 (SEC Deposition of Robert Grover, p. 146).
[21] Dkt. No. 16-2, Undisputed Fact 9. Additionally, Dr. Refai had demonstrated PCS products to the Saudi Minister of Education, Abdullah Al-Obaid. Dkt. No. 17-13, pp. 1-2. Undisputed Fact 10; Dkt. No. 17-14.
[22] Dkt. No. 16-2, Undisputed Fact 7. After learning of the SEC's recently raised question about the four-year old translation, PCS obtained another translation in January 2011 which is attached to the Supplemental Affidavit of Briane Nelson Mitchell as Exhibit A.

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 9**

> During his SEC Deposition, Mr. Grover explained that the letter from the Deputy Minister of Education "was the one that confirmed, yes, we'd be doing this project, because it was essentially a statement that they reviewed the project, please implement."[23]

At the same time that it is ignoring the actual evidence noted above, the SEC refers to a handful of internal emails that focus on the fact that Mr. Maher and PCS were attempting to obtain a written copy of whatever agreement Saudi Arabia had with Global Techniques dba PCS Middle East. (Dkt. No. 32, pp. 17-18.) None of those emails, however, change any of the other facts that were available to Mr. Maher and PCS on March 28, 2007. PCS did have a material contract with Global Techniques dba PCS Middle East which needed to be disclosed pursuant to the SEC's own rules. PCS was being told that Saudi Arabia had an agreement with Global Techniques dba PCS Middle East that required PCS to be on the ground in April, which was also when payment had been promised. Moreover, those facts were consistent with the February 2007 news reports about the approval of the Saudi education initiative as well as the December 2006 letter by the Deputy Minister of Education endorsing PCS' products.

Finally, in considering this Motion, it is also important to note further mistatements by the SEC. In responding to this Motion, the SEC has said that PCS "published its $7.15 million in revenue" (Dkt. No. 32, p. 20), "announc[ed] the $7.15 million in revenue" (Dkt. No. 32, P. 15), and "reported the revenue (Dkt. No. 32, p. 11). Those statements are not true. In fact, the actual statement made by PCS referred only to its expectation of future payment:

> For use of this portion of the PCS BrickLab(r) curriculum, PCS ME has agreed to pay PCS the sum of Seven Million One Hundred Fifty Thousand and No/100 US Dollars ($7,150,000). The full payment is expected to be received in a single sum payment no later than May 15, 2007.

---

[23] Dkt. No. 16-2, Undisputed Fact 8 (Dkt. no. 17-10, p. 9 (SEC Deposition of Robert Grover, p. 47).

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 10**

Dkt. No. 17-1, p. 2.  The SEC should not be allowed to change the meaning of PCS' forward looking statement of expectation into "published", "announced" or "reported" revenue.  Different words carry different legal consequences.

### IV.     Conclusion - - The Motion to Strike Should Be Granted

No party should be allowed to proceed with an action based upon a complaint that is riddled with false and misleading statements like the Amended Complaint in the present case.  Moreover, the SEC has no excuse for its actions.  Before filing its Amended Complaint, the SEC had the benefit of a three year investigation that included issuing more than twelve subpoenas, obtaining thousands of pages of documents, and taking five depositions.

As demonstrated in this Motion, it appears that the SEC does not believe that it is bound by the same rules as other litigants.  In the SEC's Amended Complaint, the SEC includes allegations that it knows are not true (e.g., the statements involving HJ), changes the words in emails to distort their meaning (e.g., changing recognizing revenue to recording revenue), relies upon terms in the Barron Partners convertible Note even though the SEC knew that the Note had been cancelled six months prior to March 28, 2007, and ignores the actual evidence relied upon by PCS and Mr. Maher when they disclosed the material License Agreement with Global Techniques dba PCS Middle East, as required by the SEC's rules.

The appropriate remedy in the present case is to strike all, or at least major portions of, the SEC's Amended Complaint.  By first filing, and then refusing to withdraw, its Amended Complaint, the SEC has caused significant damage to Mr. Maher, PCS, and the PCS shareholders.

Dated this 18th day of January, 2011.

              Respectfully Submitted,

              MAUK & BURGOYNE


              _____/s/_____
              Briane Nelson Mitchell, of the Firm
              Attorneys for PCS Edventures!.com, Inc.
              and Anthony A. Maher

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of January, 2011, I electronically filed the foregoing Reply Brief in Support of Motion to Strike SEC's Amended Complaint Submitted by PCS Edventures!.com, Inc. and Anthony A. Maher with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

- **Thomas M Melton**
  meltont@sec.gov
- **Cheryl M Mori**
  moric@sec.gov
- **Holly Stein Sollod**
  hsteinsollod@hollandhart.com
- **Erik F Stidham**
  EFStidham@hollandhart.com,DLJenkins@hollandhart.com,BoiseIntakeTeam@hollandhart.com
- **Daniel J Wadley**
  wadleyd@sec.gov
- **Brian C Wonderlich**
  bcwonderlich@hollandhart.com,dljenkins@hollandhart.com,BoiseIntakeTeam@hollandhart.com

 

_____/s/_____
Debrah Slack,
Assistant to Briane Nelson Mitchell

**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE SEC'S AMENDED COMPLAINT SUBMITTED BY PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 13**