BRIANE NELSON MITCHELL (ISB #2346)
**MAUK & BURGOYNE**
515 South 6th Street
Post Office Box 1743
Boise, Idaho 83701-1743
Telephone: (208) 345-2654
Facsimile (208) 345-3319
nels@maukburgoyne.com

Attorneys for Defendants PCS Edventures!.com, Inc.
and Anthony A. Maher

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 10-CV-00433 |
| Plaintiff, | |
| vs. | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) SUBMITTED BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER [DKT. NO. 16]** |
| PCS EDVENTURES!.COM, INC., an Idaho corporation, ANTHONY A. MAHER, an individual, and SHANNON M. STITH, an individual, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   The Motion to Dismiss and/or for Summary Judgment Should Be Granted ....................... 1

II.  The Undisputed Facts Establish That Neither PCS Nor Mr. Maher Made a
     Misrepresentation or Omission With The Required Scienter or Knowledge ..................... 4

III. The SEC's Additional Facts Cannot Save Its Amended Complaint .................................... 8

IV.  The SEC's Requests for Relief Should Be Dismissed ....................................................... 11

V.   Conclusion .......................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES:**

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ................................................................................................3, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................3, 4, 12

*Freeport-McMoRan Oil & Gas Co. v. FERC*,
    962 F.2d 45 (D.C.Cir. 1992) ................................................................................................4

*Ronroni v. Larkin,*
    253 F.3d 1123, (9th Cir. 2001) ................................................................................................10

*SEC v. Murphy,*
    626 F.2d 633 (9th Cir. 1980) ................................................................................................11

*Stransky v. Cummins Engine Co,*
    51 F.3d 1329, (7th Cir. 1995) ................................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................3, 4

**STATUTES**

17 CFR § 200.66 ................................................................................................4

I.     **The Motion to Dismiss and/or for Summary Judgment Should Be Granted**

The Motion to Dismiss and/or for Summary Judgment filed by PCS and Mr. Maher should be granted. (Dkt. No. 16.) In responding, the SEC argues strenuously and attempts to confuse the issues, but, despite the bombast, it is clear that the SEC's claims against PCS and Mr. Maher fail as a matter of law. A few preliminary observations about the SEC's Response (Dkt. No. 31) confirm the need for granting the present Motion.

1.     **The SEC does not defend its Amended Complaint:** The SEC makes no effort to defend its Amended Complaint. At no point in its 25-page Response does the SEC ever quote from, or specifically cite to, its Amended Complaint. Given the many misstatements and misrepresentations in the Amended Complaint, it is easy to understand why the SEC has decided to turn its back on its own Amended Complaint. The misstatements and misrepresentations in the SEC's Amended Complaint are the subject of the Motion to Strike (Dkt. No. 15 and 15-1) that was filed with this Motion.

2.     **The SEC has conceded the undisputed facts submitted by PCS and Mr. Maher in support of their Motion to Dismiss and/or for Summary Judgment:** On November 8, 2010, PCS and Mr. Maher filed a Statement of Undisputed Facts in support of this Motion. (Dkt. No. 16-2.) The SEC does not dispute the truth or accuracy of the Statement of Undisputed Facts submitted by PCS and Mr. Maher. Under Rule 56, when a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed" or "grant summary judgment…." Fed.R.Civ.P. 56(e). Moreover, District of Idaho Local Civil Rule 7.1(e) provides that the failure to properly address the other party's assertions of fact means that "the Court nonetheless may consider the uncontested material facts as undisputed…."

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 1**

3.      **The additional facts that the SEC has offered in its Response cannot save the SEC's Amended Complaint:**  In responding to this Motion, the SEC submitted a 21 page "Statement of Facts" which primarily consists of additional "facts" that are little more than the SEC's arguments and innuendo punctuated by excerpts from a handful of emails that the SEC has taken out of context.  (Dkt. No. 33)  The Response Brief filed by the SEC then re-hashes those arguments which the SEC would like to characterize as additional "facts."  (Dkt. No. 31)  The problem, however, is that the SEC does not connect those additional "facts" to its Amended Complaint or to the factual assertions underlying this Motion.  The SEC should not be allowed to use sleight of hand to avoid its Amended Complaint or specifically addressing the undisputed facts upon which this Motion is based.  Indeed, it seems obvious that the SEC has used its additional "facts" in an effort to confuse the issues and cause prejudice by not only presenting the emails out of context, but also ignoring the underlying events that supported the decisions and statements made by PCS and Mr. Maher.

4.      **The absence of legal support for the SEC's case:**  PCS never recognized or reported any revenue from the License Agreement with PCS Middle East on its quarterly or annual financial statements.[1]  In responding to this Motion, the SEC does not cite any securities fraud cases, similar to this one, where a company properly concluded that it should not recognize or report revenue, and, as a result, did not recognize or report the revenue.  Moreover, the SEC also offers no support for its "calculated gamble" theory.  That is, at several different points the SEC argues that PCS and Mr. Maher made a "calculated gamble" when they decided to report the fact that PCS had entered into a material definitive contract that needed to be reported to the

---

[1] "PCS never recognized any revenue from the License Agreement with Global Techniques (dba PCS Middle East) on its quarterly or annual financial statements."  Dkt. No. 16-2 (Undisputed Fact No. 1).  "PCS never reported any revenue from the License Agreement with Global Techniques (dba PCS Middle East) on its financial statements that were filed with the SEC."  Dkt. No. 16-2 (Undisputed Fact No. 2).

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 2**

SEC in a Form 8-K.[2]  In its Response, the SEC does not offer any legal authority that would support its "calculated gamble" theory, particularly given the overwhelming evidence that supported the need to make a disclosure back on March 28, 2007.[3]

5.  **The SEC has ignored the legal standards that apply to this Motion:**  In their Brief, PCS and Mr. Maher discussed the recent Supreme Court cases that have a direct bearing on this type of Motion.  The SEC, in its Response, tried to ignore the three key Supreme Court cases:

- In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court said that a complaint must contain sufficient factual detail to "state a claim to relief that is plausible on its face."  Allegations phrased as legal conclusions do not need to be accepted as true.  *Id.*, 550 U.S. at 555.

- In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) the Supreme Court reiterated that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Moreover, a complaint alleging facts that are "merely consistent with a defendant's liability…stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*, 129 S.Ct. at 1949.

- In *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322-3 (2007), the Supreme Court said that the inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual

---

[2] *See* Dkt. No. 31, p. 12 ("eleventh hour calculated gamble," "gamble did not pay of"); Dkt. N. 32, p. 17 ("rolling the dice); Dkt. No. 32, p. 19 ("unwise decision to gamble that Refai would ultimately come through"); Dkt. No. 33, p. 8 ("eleventh hour calculated gamble," "gamble did not pay off").  Moreover, the SEC ignores the fact that PCS had, in fact, consulted with its outside auditors and its attorneys prior to disclosing the License Agreement.  *See* Dkt. No. 17-4 (PCS email exchange with outside counsel who reviewed the form 8-K and press release before they were filed); Dkt. No. 17-3, pp. 2-3 (PCS email to its outside auditor).

[3] *See* Dkt. No. 16-2 (Statement of Undisputed Facts); Dkt. No. 17-10 (SEC Deposition of Robert Grover), Dkt. No. 17-11 (SEC Deposition of Anthony Maher), Dkt. No. 17-12 (Deputy Minister of Education Letter), Dkt. No. 17-13 (Arab New article), Dkt. No. 17-14 (Photo of Dr. Refai with Saudi Minister of Education), Dkt. No. 17-15 (Reports of Successful Pilot Programs in Saudi Arabia).

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 3**

allegation, scrutinized in isolation, meets that standard." Courts should look "holistically" at the underlying facts, and the "strength of an inference cannot be decided in a vacuum" and "consideration must be given to plausible nonculpable explanations for the defendant's conduct." *Id.*, 551 U.S. at 323-4. In the context of a private securities fraud action, the Supreme Court held that a "complaint will survive…only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*, 551 U.S. at 324.

Given the heightened ethical obligations of the SEC (17 CFR § 200.66), and government lawyers (*Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47 (D.C. Cir. 1992)), the SEC should not be allowed to argue that a complaint filed by the SEC in federal court should be judged by lower standards than those of private litigants. (Dkt. No. 31, pp. 2-4.) Moreover, the SEC's argument that this Court should utilize the "no set of facts" language from *Conley v. Gibson* (Dkt. No. 31, p. 4) should be rejected given the Supreme Court's statement that "this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard…." *Twombly*, 550 U.S. at 563.[4]

## II.   The Undisputed Facts Establish That Neither PCS Nor Mr. Maher Made A Misrepresentation or Omission With The Required Scienter or Knowledge

The undisputed facts in this matter establish that the SEC cannot, as a matter of law, establish either of two essential requirement to its claims - - that is, (1) PCS and Mr. Maher made misrepresentations and omissions, (2) with the requisite scienter or knowledge.[5] Indeed, the SEC

---

[4] Most of the cases cited by the SEC (Dkt. No. 31, pp. 2-4) are readily distinguishable because they followed *Conley,* and not the Supreme Court's recent decisions in *Twombley* and *Iqbal.*

[5] The SEC discusses materiality in the context of its statement that the price of PCS' stock rose by 400% after the disclosure of the License Agreement with Global Techniques dba PCS Middle East. Dkt. No. 31; pp. 15, 20. The SEC presumably is also aware of the fact that the price of PCS shares have fallen by 500% since the SEC filed its

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 4**

did not respond to the Statement of Undisputed Facts submitted by PCS and Mr. Maher, in all probability, because it recognizes that those facts are all true.  Moreover, the SEC's failure to respond means that the Court should treat all of those facts as conceded and undisputed for purposes of deciding the present Motion.  Fed.R.Civ.P. 56(e); Dist. Idaho Local Civ. Rule 7.1(e).

A review of some of the undisputed facts (Dkt. No. 16-2) demonstrates that PCS and Mr. Maher did act properly and speak accurately based upon the information that was available to them during the time period covered by the Amended Complaint (i.e., March 28, 2007 to June 29, 2007):

> 6.    In 2006, Dr. Refai of Global Techniques (dba PCS Middle East) initiated successful pilot programs utilizing PCS products in several schools in Saudi Arabia.
>
> 7.    On or around December 27, 2006, Dr. Naif Bin Nasul Al-Romi, Deputy Minister of the Saudi Ministry of Education, sent a letter to the Ministry of Education Contracting Department that [was interpreted as an endorsement of PCS].
>
> 8.    During his SEC Deposition, Mr. Grover explained that the letter from the Deputy Minister of Education "was the one that confirmed, yes, we'd be doing this project, because it was essentially a statement that they reviewed the project, please implement."  (SEC Deposition of Robert Grover, p. 47.)
>
> 9.    In February 2007, the King of Saudi Arabia and his Council of Ministers announced that they had "approved a six-year, SR 9-billion project to develop the country's public education."  Moreover, Education Minister Abdullah Al-Obaid said the King Abdullah education project was aimed at keeping pace with scientific and technological developments.
>
> 10.   Dr. Refai had demonstrated PCS' products to the Saudi Minister of Education, Abdullah Al-Obaid.
>
> 11.   During his SEC Deposition, Mr. Grover testified…

---

initial Complaint on August 26, 2010.  According to Yahoo! Finance, PCS stock was trading at $.66 per share on August 26, 2010, while the price on January 5, 2011 was $.12.  Moreover, most brokerage firms now refuse to process transactions of PCS stock because of the pendency of the SEC lawsuit.

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 5**

>       Q      So, he kept telling you that there was a contract; it was done; he just needed to pick it up?
>       A      Yes.

(SEC Deposition of Robert Grover, pp. 127-128.)

    12.    During his SEC Deposition, Mr. Grover provided testimony regarding "a specific phone call with Refai, asking him to confirm he did, indeed, have the order in place, the contract in place, and that this was going ahead in April.  And he said, 'Absolutely.  You've got to be on the ground here in April.'" (SEC Deposition of Robert Grover, p. 136.)

    14.    Prior to March 28, 2007, Mr. Maher believed that the agreement was complete because Dr. Refai was "1,000 percent confident it was going to happen."  (SEC Deposition of Anthony A. Maher, p. 57.)

    15.    Prior to March 28, 2007, Dr. Refai confirmed to Mr. Grover that PCS had been selected.  During his SEC Deposition, Mr. Grover explained:

>       Q      And at that point was it your understanding from Refai that PCS had been selected as the provider?
>       A      Yes.  He said there was no doubt.  Those were his words, because we asked him a number of times.

(SEC Deposition of Robert Grover, pp. 53-54.)

    16.    Mr. Grover verified some of the information that he had received from Dr. Refai on the Saudi Ministry of Education website.

    17.    Prior to March 28, 2007, it was Mr. Grover's understanding that, in connection with the agreement between Saudi Arabia and Global Techniques (dba PCS Middle East), "pretty much everything was done except final stages, because [Dr. Refai] kept saying that [PCS was] going to have to be shipping materials as early as April."  (SEC Deposition of Robert Grover, p. 56.)

    18.    During his SEC Deposition, Mr. Grover provided testimony regarding his belief…

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 6**

>A    Well, with Refai, we had enough orders that did come through, that when he is that insistent, I'm pretty sure he's telling the truth.
>Q    Even with this large amount, the substantial amount?
>A    It seemed very reasonable, based on all of the press that was out on the King Abdullah project and everything that I had been doing.

(SEC Deposition of Robert Grover, pp. 147-148.)

20.    During his SEC Deposition, Mr. Grover provided testimony regarding the payment from Saudi Arabia to Global Techniques (dba PCS Middle East):

>Q    Okay. And in 8K that came out that day, March 28th, it said that the money would be collected by May 15th; correct?
>A    Mm-hmm. Refai was absolutely certainly he was going to collect, actually even before that. He said he was going to have it in April….
>Q    Okay. So, he said he would have the money from the government, the cash advance in April?
>A    Yes.

(SEC Deposition of Robert Grover, p. 146.)

21.    During his SEC Deposition, Mr. Maher explained that he understood that Dr. Refai "had the contract and that [he] could get paid the license fee in advance." (SEC Deposition of Anthony A. Maher, p. 107.)

22.    Prior to March 28, 2007, PCS and its management believed that Global Techniques (dba PCS Middle East) had an agreement to provide the PCS BrickLab curriculum to Saudi Arabia.

23.    Prior to March 28, 2007, PCS and its management believed that the payment from the License Agreement with Global Techniques (dba PCS Middle East) would be received prior to May 15, 2007.

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 7**

> 24. During his SEC Deposition, Mr. Grover explained that he had trust in Dr. Refai because: "I'm talking to [Dr.] Refai 90 minutes a day, so I had a lot more confidence in what he was telling us." (SEC Deposition of Robert Grover, p. 145.)
>
> 28. During April 2007, there were additional reports from Saudi Arabia confirming that the King Abdullah Project for the Development of Public Education was moving forward:
>
>> Saudi Arabia has begun a major overhaul of its education system, pumping SR11.8 billion ($3.1 billion) into the project, to ensure overall development of its students by increasing their knowledge as well as their physical, professional, psychological and intellectual capabilities.

Finally, it is important to remember that the actual statement that the SEC has challenged discussed PCS' expectation of payment, PCS did not report revenue or collections:

> For use of this portion of the PCS BrickLab(r) curriculum, PCS ME has agreed to pay PCS the sum of Seven Million One Hundred Fifty Thousand and No/100 US Dollars ($7,150,000). The full payment is expected to be received in a single sum payment no later than May 15, 2007.

Dkt. No. 17-1, p. 2. Nevertheless, despite the forward looking nature of the PCS statement regarding its expectations, the SEC has chosen to distort the clear language and claim that PCS "reported" revenue, "announce[d]" the revenue, and said that it "was entitled to collect $7.15 million."[6] The SEC should not change words when it knows, as it does here, that the distinctions between the words could have significant legal consequences.

### III. The SEC's Additional Facts Cannot Save Its Amended Complaint

Rather than addressing the actual evidence that was considered by PCS and Mr. Maher at the time that the Form 8-K was filed on March 28, 2007, the Amended Form 8-KA was filed on

---

[6] *See* Dkt. No. 31, pg. 12 ("announce...$7.15 million in illusory revenue"), p. 20 ("entitled to collect $7.15 million"), p. 22 ("entitlement to collect the $7.15 million"), p. 23 ("entitled to collect $7.15 million"); Dkt. No. 32, p. 11 ("reported the revenue"), p. 15 ("announcing the $7.15 million in revenue"), p. 20 ("published it's $7.15 million in revenue").

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 8**

April 17, 2007, and the Form 10-KSB was filed on June 29, 2007, the SEC has instead attempted to cloud the issues by introducing additional "facts" which consist, in large part, of taking Mr. Maher's emails out of context and adding a layer of argument and speculation.  The SEC's additional "facts," however, cannot either change any of the actual undisputed facts, or save the Amended Complaint.  A few examples illustrate this point:

     1.     The SEC refers to several of Mr. Maher's emails from 2006 and some of his negative comments.  (Dkt. No. 31, pp. 7-18.)  However, the effort to sell products into Saudi Arabia was not static, there was a flood of positive evidence that developed during early 2007 that supported the belief that the material contract with Global Techniques dba PCS Middle East could and should be disclosed as required by the SEC.[7]  Moreover, the evidence available as of March 28, 2007, as demonstrated by the undisputed facts (Dkt. No. 16-2), supported the belief that Dr. Refai had an agreement with Saudi Arabia that would support the payment obligation to PCS.

     2.     The SEC obviously hopes that it can prejudice the Court by quoting from some of Mr. Maher's more distrustful and pessimistic emails.  At his SEC deposition, Mr. Maher responded to the SEC's question about the tone of his emails:

> Q    Well, it was clear in your e-mails that you had a certain amount of distrust.
> A    I'm a distrustful guy with anybody I don't know well, and it's a sickness I have, I guess.
>                * * *
> Q    It entered an email.
> A    I confess.  And, Norm, I'm not as eloquent as I ought to be in my e-mails from time to time.  I'm pretty up-front about things when I'm not happy.

---

[7] *See* Dkt. No. 16-1, pp. 11-16 (Opening Brief filed by PCS and Mr. Maher in Support of Their Motion to Dismiss and/or for Summary Judgment, pp. 11-16).

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 9**

(SEC Deposition of Anthony Maher, p. 47.)[8]  Furthermore, Mr. Grover, who has worked with Mr. Maher for twenty years, also explained the dynamic that was at work with some of the emails:

> A   I remember conversations like this with Tony from time to time.  He goes through - - and without being disrespectful to him, he goes through periods where he is very suspicious, not just of Refai, but of any partner….
> I've always been - - when he goes to make statements like that, I always go through and reiterate typically the situation with Refai, the various pieces of leverage that we have in a relationship with him.  He depends to a great extent on us for intelligence, for guidance, for logistics. ….  When he's frustrated with Refai, it comes out in this kind of fashion.  He starts to reference Refai as a criminal or somebody who's going to be taking advantage of us, which he typically apologizes for within a few days.
> Q   Oh, okay.  So, you didn't believe that Refai was setting you up?
> A   I never believed that Refai was doing anything dishonest.  He is in a very difficult environment to do business, but no, I don't believe he's dishonest.

(SEC Deposition of Robert Grover, pp. 114-5.)[9]

    3.   The SEC also focuses on emails that Mr. Maher sent to Dr. Refai after March 28, 2008, during which time Mr. Maher, along with Mr. Grover, were attempting to obtain the expected payment and a copy of Dr. Refai's agreement with Saudi Arabia.  (Dkt. No. 31, pp. 15-18.)  Whatever frustration Mr. Maher may have demonstrated, which is understandable under the circumstances, does not change any of the information that he (and others at PCS) believed at the time of the March 28, 2007 Form 8-K, the May 17, 2007 Amended Form 8-KA, or the June 29, 2007 Form 10-KSB.  *See Ronroni v. Larkin*, 253 F.3d 1123, 1130 n. 12 (9th Cir. 2001 ("fraud

---

[8] This additional reference to the SEC Deposition of Anthony Maher is included in the Supplemental Affidavit of Briane Nelson Mitchell submitted in support of this Motion (Mitchell Supp. Aff.") as Exhibit C.
[9] This additional reference to the SEC Deposition of Robert Grover is included in the Mitchell Supp. Aff. as Exhibit B.

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 10**

by hindsight is not actionable); *Stransky v. Cummins Engine Co*. 51 F.3d 1329, 1332 (7th Cir. 1995) ("the securities laws typically do not act as a Monday Morning quarterback").

4. The SEC remains obsessed with Barron Partners and the ebitda issue, and again hopes that it can prejudice the Court. (Dkt. No. 31, pp. 6-10.) There are a number of problems with the SEC's obsession. First of all, the SEC's Amended Complaint (at ¶¶ 25-19, 36, 46-47) only discusses the ebitda issue in the context of the $1 million convertible Note that had been cancelled on October 17, 2006.[10] Moreover, the SEC's belated introduction of new facts relating to the Warrants and ebitda cannot save the SEC's case. (Dkt. No. 33, pp. 3, 6-8.) Before it filed its first Complaint, the SEC was on notice that the ebitda requirement had been eliminated from the Warrants.[11] In addition, the SEC was also on notice that the initial Agreement with Barron Partners had, in fact, been amended and changed on several occasions.[12]

### IV. The SEC's Requests for Relief Should Be Dismissed

Another reason for dismissing the SEC's Amended Complaint is based upon the fact that the SEC has not, and cannot, come forward with sufficient factual allegations to support the injunction, penalties, or officer and director bar that it seeks with its lawsuit. In their Opening Brief, PCS and Mr. Maher showed that the SEC cannot meet its "burden of showing that there is a reasonable likelihood of future violations of the securities laws," *citing SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980), and reviewing the overlapping factors needed to support any of the remedies, which are absent from the Amended Complaint (and the case in general) - - recurrent

---

[10] A Form 8-K was filed with the SEC on October 23, 2006 disclosing the cancellation of the $1 million convertible Note. (Dkt. No. 17-8.) The SEC also acknowledges that "Barron began converting its preferred stock into common stock in February 2007 and completed its conversion by the end of March 2007. It is uncertain...whether the EBITDA penalties would apply..." Dkt. No. 32, p. 13.

[11] *See* the Form 10-KSB that was filed with the SEC on June 29, 2007 which announced the elimination of the ebitda issue from the Warrants. (Dkt. No. 17-9 (SEC Exhibit. 12).

[12] Dkt. No. 17-9 (SEC Exhibit 12).

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SEC'S AMENDED COMPLAINT (AND/OR FOR SUMMARY JUDGMENT) BY DEFENDANT PCS EDVENTURES!.COM, INC. AND ANTHONY A. MAHER - 11**

nature, scienter, repeat offender, egregiousness of the violation, economic stake, role or occupation, and likelihood of future reoccurrence.  (Dkt. No. 16-1, pp. 19-20).

In response, the SEC cites a 1971 district court case from Illinois and suggests that it is premature to consider the SEC's requests for relief.  (Dkt. No. 31, p. 24.)  The SEC's argument should be rejected.  As the Supreme Court explained, "[t]he need at the pleading stage for allegations plausibly suggesting…reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557.  Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 129 S.Ct. at 1950.  In addition, "when the allegation in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Twombly*, 555 U.S. at 558.

## V. Conclusion

The SEC has spent more than three years attempting to create a case against PCS and Mr. Maher.  That was more than enough time.  The SEC's case should be dismissed as a matter of law.

Dated this 18th day of January, 2011.

                                                            Respectfully Submitted,

                                                            MAUK & BURGOYNE

                                                            _____/s/_____
                                                           Briane Nelson Mitchell, of the Firm
                                                           Attorneys for PCS Edventures!.com, Inc.
                                                           and Anthony A. Maher

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of January, 2011, I electronically filed the foregoing Reply Brief in Support of Motion to Strike SEC's Amended Complaint Submitted by PCS Edventures!.com, Inc. and Anthony A. Maher with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

- **Thomas M Melton**
  meltont@sec.gov
- **Cheryl M Mori**
  moric@sec.gov
- **Holly Stein Sollod**
  hsteinsollod@hollandhart.com
- **Erik F Stidham**
  EFStidham@hollandhart.com,DLJenkins@hollandhart.com,BoiseIntakeTeam@hollandhart.com
- **Daniel J Wadley**
  wadleyd@sec.gov
- **Brian C Wonderlich**
  bcwonderlich@hollandhart.com,dljenkins@hollandhart.com,BoiseIntakeTeam@hollandhart.com

_____/s/_____
Debrah Slack,
Assistant to Briane Nelson Mitchell